UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | |
|---|---|
| GARVEY FARM LP, et al., | ) |
| Plaintiffs, | ) Civil Action No. 2: 23-015-DCR |
| V. | ) |
| CITY OF ELSMERE, KENTUCKY, et al., | ) **MEMORANDUM OPINION** |
| Defendants. | ) **AND ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendants City of Elsmere ("Elsmere"), Elsmere council members, and city administrator Matt Dowling have filed a motion to dismiss Plaintiffs Garvey Farm LP and Flagship Communities Reit's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  [Record No. 9]  The defendants assert: (1) council members and the city administrator are immune from suit in their individual capacities; (2) the plaintiffs' Fair Housing Act §3604(b) claim should be dismissed because their property is not a "dwelling"; and (3) the plaintiffs' taking and conspiracy claims fail because there was no "taking," and the plaintiffs have not shown pretext.  [*Id.*]

The plaintiffs counter by arguing that: (1) immunity is not a shield for bad faith; (2) a "dwelling" includes vacant land; and (3) a "taking" occurred with discriminatory animus, satisfying a showing of pretext.  [Record No. 12]  The defendants' motion will be granted, in part, and denied, in part, for the reasons that follow.

- 1 -

I. **Background**

The following facts are taken as true for the purposes of analyzing and resolving the defendants' motion. The plaintiffs own and operate a mobile home park in the City of Elsmere and recently acquired 18.02 acres of adjacent land with the intent of expansion. [Record No. 1] The city attorney sent a letter to the plaintiffs before purchase, reminding them that the property was "not zoned to expand the Mobile Home Park." [*Id.*] The plaintiffs subsequently purchased the property, which is currently undeveloped and zoned for single-family residences. [*Id.*] Elsmere then passed Zoning Ordinance § 2.07(K), an "amendment [that] makes it more difficult to expand manufactured mobile home parks." [Record No. 1]

The plaintiffs submitted a zoning amendment application to the Kenton County Planning Commission ("KCPC"), seeking "to re-zone the Property from [single-family dwellings] to a Mobile Home Park." [Record No. 1] The KCPC recommended granting the zoning map amendment, finding it to be "generally in agreement with the adopted comprehensive plan," which is "intended to guide growth and development in Kenton County." [*Id.*] The matter was transferred to the City of Elsmere, according to Kentucky's zoning map amendment process.[1]

Elsmere denied the amendment following a public hearing. The "purported reasons" for the denial include: (1) concerns with an increase in crime; (2) "concerns about the number of manufactured homes within the City of Elsmere compared to other municipalities within Kenton County"; and (3) potential code violations. [Record No. 1] City council members

---

[1] In Kentucky, the process for a zoning map amendment includes submission to the planning commission, which makes a recommendation to a legislative body or fiscal court for denial or approval. KY. REV. STAT. §§ 100.211, 100.277.

entered an alleged "pre-written seven-page Municipal Order denying the requested Map Amendment." [*Id.*] Elsmere subsequently "sent a letter to Plaintiffs expressing their intent to inspect the property" and "desire to turn a portion [of the] Property into a park and use another portion for the construction of a 'public works facility.'" [*Id.*]

The plaintiffs filed suit in this Court, alleging Elsmere's reasons for denying their zoning amendment application were "fabricated," and "pretext used to prevent the development of additional affordable homes that would be predominantly occupied by Hispanics, Latinos, single women, families, and others who, because of their personal status are protected by federal, state or local law from discrimination." [*Id.*] Their Complaint claims violations of due process, the Fair Housing Act, 42 U.S.C §§ 3604(a), (b) & 3617, the Takings Clause of the United States and Kentucky Constitutions, and a charge of conspiracy to commit an unlawful taking. [Record No. 1]

## II.    Standard of Review

This Court examines whether the plaintiffs' Complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" when considering the defendants' motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Generally, the plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). The Court must "(1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)).

### III. Analysis

The defendants do not challenge the plaintiffs' Fair Housing Act §§3604(a) and 3617 claims, and the plaintiffs have indicated a desire to voluntarily withdraw their due process claims pursuant to Rule 41 of the Federal Rules of Civil Procedure. [Record Nos. 9, 12] The plaintiffs state that they are withdrawing their due process claims *without* prejudice, but the defendants argue that they should be dismissed *with* prejudice. [Record Nos. 12, 13] The defendants correctly note in their Reply that Rule 41(a) relates to the dismissal of an *action*, not individual claims. [ Record No. 13]

"The problem, though, is more technical than substantial." *Management Investors v. United Mine Workers of America*, 610 F.2d 384, 394 n.22 (6th Cir. 1979) (quoting 5 James W. Moore et al., *Moore's Federal Practice*, ¶ 41.06(1) (2d ed. 1948)). "[T]he use of a notice of voluntary dismissal to eliminate some, but not all claims, from a case 'is more properly viewed as a Rule 15 amendment to the complaint.'" *Doss v. Michigan Dep't of Corrections*, No. 20-10266, 2021 U.S. Dist. LEXIS 48562, at *6 (E. D. Mich. Mar. 16, 2021) (quoting *Management Investors*, 610 F.2d at 394 n.22). Courts from within this circuit "have cited *Management Investors* for the proposition that where a plaintiff seeks to dismiss one count of his multi-count complaint, the Court should consider it as a motion to amend the complaint to delete the specified claims." *Id.* (collecting cases). "[I]t is not unusual for motions styled as Rule 41 motions or motions to dismiss to be construed as Rule 15 motions for leave to amend." *Baker v. City of Detroit*, 217 F. App'x 491, 496-97 (6th Cir. 2007). A case cited by the defendants is one such example. *See Barriento v. UT-Battelle, LLC,* 284 F. Supp. 2d 908, 916 (S.D. Ohio 2003).

In *Barrientos*, the court granted the plaintiffs' "motion and deem[ed] Plaintiffs' Complaint to be amended to omit their second claim for relief," after explaining that "Federal Rule of Civil Procedure 41(a)(2) is only available to dismiss entire actions, not single claims. Rule 15(a), however, permits a party to amend its pleading by leave of court, which 'shall be freely given when justice so requires.'" 284 F. Supp. 2d at 916.

The Court should freely grant leave to amend pleadings when justice so requires. See Rule 15(a)(2), Fed. R. Civ. P. "In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, there is no apparent or declared reason such as undue delay, bad faith, undue prejudice, or repeated failure to cure deficiencies. The case was filed only a few months ago, there is no indication of bad faith, and the plaintiff has not previously requested amendment.

The plaintiffs' attempted voluntary withdrawal—construed as a motion to amend—will be granted for the limited purpose of omitting their due process claims.

### A. Legislative Immunity

The defendants argue that individual Elsmere city council members, and city administrator Matt Dowling have absolute legislative immunity. [Record No. 9] [2] "Local

---

[2] The defendants also mention in a footnote that "[c]ommon law qualified immunity extends to liability under the Fair Housing Act," and the plaintiffs address qualified immunity in their response. [*See* Record Nos. 9, 12.] The Court will decline to address this issue because the defendants explain in their reply that they were not presenting a qualified immunity argument at this time. [Record No. 13]

legislators sued in their individual capacities may invoke absolute legislative immunity to insulate themselves from liability for . . . . 'all actions taken in the sphere of legitimate legislative activity.'" *Vaduva v. City of Xenia*, 780 F. App'x 331, 335 (6th Cir. 2019) (first citing *Smith v. Jefferson Cty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 218 (6th Cir. 2011); and then quoting *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 437 (6th Cir. 2005)).

But the plaintiffs argue that even if the denial of a zoning map amendment is a "legislative act," the individual council members are not immune because the plaintiffs "have alleged that the denial was based on racial animus." [Record No. 12] In support, they "rely heavily on arguments from *Haskell v. Washington Township*, 864 F.2d 1266, 1277-78 (6th Cir. 1988), a case which has received severe negative treatment since its decision and has been mostly overruled regarding legislative immunity by the Supreme Court in [*Bogan v. Scott-Harris*, 523 U.S. 44, 54-55 (1998)]." *Pratt Land & Dev., LLC v. City of Chattanooga*, No. 19-cv-010, 2020 U.S. Dist. LEXIS 159744, at *7 (E. D. Tenn. Sept. 2, 2020). *See also Vaduva*, 780 F. App'x at 335 n.4 (stating that although *Haskell* "appeared to hold otherwise," the decision in *Bogan* "made clear that the determination of whether an act[ ] is 'legislative' must be made without regard to the legislators' subjective intent"); *Gamrat v. McBroom*, 822 F. App'x 331, 334 (6th Cir. 2020) ("The House's expulsion of Gamrat was legislative activity, regardless of any bad faith, and Gamrat cannot sue the House Defendants for participating in that process."). The sole issue regarding absolute legislative immunity in this case, therefore, is whether the council members' acts were legislative.

In this case, the council members engaged in the following acts: (1) denying a zone map amendment; (2) passing Zoning Ordinance § 2.07(K); and (3) exercising their power of eminent domain. [Record No. 1] Denial of a zoning map amendment and passing a zoning

ordinance are legislative acts for purposes of individual immunity. *See Blue Water Fin. Co. v. City of Lansing*, No. 97-CV-200, 1998 U.S. Dist. LEXIS 4218, *10 (W.D. Mich. Mar. 10, 1998) ("[T]he denial of a rezoning amendment, even if motivated by racial animus instead of traffic concerns, constitutes 'a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents.'" (quoting *Bogan v. Scott-Harris*, 523 U.S. 44, 55-56 (1998))); *Pratt*, 2020 U.S. Dist. LEXIS 159744, at *10 ("It is well established that passing an ordinance is a 'purely legislative act.'" (quoting *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 438 (6th Cir. 2005))). Additionally, "the decision to exercise the power of eminent domain is a legislative function" *First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304, 321 (1987); *see also City of Arlington v. Golddust Twins Realty Corp.*, 41 F.3d 960, 964 (5th Cir. 1994) ("A municipality's exercise of the power of eminent domain is a legislative act."). Here, Administrator Matt Dowling and City of Elsmere council members are immune from suit in their individual capacities.[3]

### B.   Fair Housing Act §3604(b)

The defendants next contend that the plaintiffs' Fair Housing Act, 42 U.S.C. § 3604(b) claim must be dismissed because the land in question is undeveloped, the plaintiffs "purchased the Property not for the reason it was 'offered for sale,'" and "there are no grounds . . . to assert there was discrimination in the sale of the Property itself." [Record Nos. 9, 13]  The plaintiffs counter that vacant land can be considered a "dwelling" under the statute, and the defendants' "conduct constitutes discrimination."  [Record No. 12]

---

[3]   The plaintiffs do not refute the defendants' claim that absolute immunity may be extended to Administrator Dowling "as a witness for the city." [Record Nos. 9, 12]

The Fair Housing Act forbids "discriminat[ion] against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). A "dwelling" is defined as "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and *any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure, or portion thereof*." *Id.* at § 3602(b) (emphasis added).

Available case law, although merely persuasive, supports a finding that vacant land may be considered a dwelling under the Fair Housing Act. For example, in *H.O.P.E, Inc. v. Lake Greenfield Homeowners Association*, the plaintiffs "purchased vacant land in a housing development, on which they intended to build a residence." *H.O.P.E., Inc. v. Lake Greenfield Homeowners Ass'n*, No. 16 CV 5422, 2017 U.S. Dist. LEXIS 63037, at *1 (N.D. Ill. Apr. 26, 2017). The plaintiffs sought permission to first build a storage shed on the property, but the homeowner's association denied the plaintiffs' request. *Id.* "At the heart of Defendants' challenge to Plaintiffs' Fair Housing Act claims [was] the definition of 'dwelling' under the Fair Housing Act." *Id.* at *11-12. Relying on the plain text of the statute, the court concluded that a dwelling "can be an existing residence or vacant land on which a residence will be constructed," and the plaintiffs intended to build a residence when they purchased the property. *Id.* at *12. Here, the plaintiffs purchased the vacant property with the intent to establish residences for mobile park customers.

The defendants counter that vacant land can be protected by § 3604(b) only if a plaintiff "intend[s] to build the kind of residence on the land for which the lot was offered for sale,"

*i.e.*, a plaintiff must purchase properly zoned property for the intended use. [Record No. 9] The defendants failed to fully develop this argument in their initial briefing. *See Carr v. Potter*, 2010 U.S. Dist. LEXIS 3145, at *6 (N.D. Ill. Jan. 14, 2010) ("Defendant's argument is fully developed only in Defendant's reply brief, and Plaintiff has not had the opportunity to respond. . . . the Court finds that Defendant's initial motion to dismiss did not fairly raise this argument."). Regardless, there is no indication that undeveloped land may be considered a "dwelling" under the Fair Housing Act only if the real property is suitably zoned. 42 U.S.C. § 3602; *Cf. Lauer Farms, Inc. v. Waushara Cnty. Bd. of Adjustment*, 986 F. Supp. 544 (E.D. Wis. 1997) (focusing on the temporary period that potential migrant-worker residents would remain on the property but concluding that the plaintiffs' § 3604(b) claim survived after the board denied the plaintiffs' conditional use permit request, despite the property's vacant, undeveloped characteristics).[4] The property in this matter satisfies the Fair Housing Act, 42 U.S.C. § 3604(b).[5]

### C. Takings Clause and Conspiracy

The parties agree that the plaintiffs' conspiracy theory is contingent upon an underlying constitutional violation and that a taking claim is evaluated under the same standard under the

---

[4] *In re Cole*, cited by the defendants is distinguishable because the case did not involve the property owner alleging "unlawful discrimination against a person or class of persons who reside or would reside in the dwelling absent the unlawful discrimination." No. 15-mc-00017, 2019 WL 2440082, at *5 (W.D. Tenn. June 11, 2019).

[5] The defendants contend that "there are no grounds for Plaintiffs to assert there was discrimination in the sale of the property itself." [Record No. 9-2] Stated differently, they argue that the plaintiffs "cannot use post-sale events to argue Defendants discriminated against them in the actual sale of the Property, as required by §3604(b)." [Record No. 13] This argument also was insufficiently developed in the defendants' initial memorandum. [*See* Record No. 9.]

United States and Kentucky constitutions. [Record Nos. 9, 12] The plaintiffs assert Elsmere's plan to acquire the real property constitutes a "pretextual taking." The defendants counter that Elsmere's actions did not constitute a "taking" or pretext.

The Takings Clause of the Fifth Amendment to the United States Constitution provides "nor shall private property be taken for public use, without just compensation," and applies to the States through the Fourteenth Amendment. *See Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226 (1897). Here, the defendants argue that "no taking ever occurred" because Elsmere's condemnation proceedings are in their initial phase. [Record No. 9] But the plaintiffs contend that the defendants have taken action beyond "initiation," including passing a municipal order. [Record No. 12] In *Beaver Street Investments, LLC v. Summit County*, "[t]he dispositive issue" was "what constituted the 'act of taking.'" No. 22-3600, 2023 U.S. App. LEXIS 9569, at *6 (6th Cir. Apr. 21, 2023). The Sixth Circuit stated the "general principle" as being "that for a taking to occur, 'there must be a "final decision" to take property . . . meaning that it is "known to a reasonable degree of certainty" what will happen to the property . . . .'" *Id.* at *8 (quoting *Harrison v. Montgomery Cnty.*, 997 F.3d 643, 646 (6th Cir. 2021)). Finality "ensures that a plaintiff has actually been injured by the Government's action and is not prematurely suing over a hypothetical harm." *Pakdel v. San Francisco*, 141 S. Ct. 2226, 2230 (2021).

In this case, the plaintiffs allege that Elsmere's municipal order states that "the City of Elsmere, Kentucky has determined that it is in the public interest to acquire the approximately 18 acre parcel of real property owned by Flagship Communities REIT for the construction of a Public Works Facility and a Public Park," and Mayor Lenhof "shall execute any and all documents necessary to acquire the subject real estate." [Record No. 12] Viewing the Complaint in the light most favorable to the nonmovant, the plaintiffs may have pleaded factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged; however, the Court need not reach this issue with finality because the plaintiffs fail to show pretext.

"Pretext" in a Takings Clause matter regards whether the government acquires the property for "public use," as stated in the Fifth Amendment to the United States Constitution. "The 'public use' requirement is an explicit limit on the power of government to take private property for, as the Supreme Court has long recognized, a taking -- even if justly compensated -- must serve a legitimate public purpose." *99 Cents Only Stores v. Lancaster Redevelopment Agency*, 237 F. Supp. 2d 1123, 1128 (C.D. Cal. 2001) (citing *Thompson v. Consolidated Gas Corp.*, 300 U.S. 55, 80 (1937)). The parties agree that Elsmere's asserted purpose is to use the land to construct a public works facility and public park. [Record Nos. 1, 12] "Although there does not appear to be any controlling authority from Kentucky courts or courts with the Sixth Circuit," the plaintiffs argue that "bad faith takings are not limited to situations where the government is attempting to confer a 'private benefit.'" [Record No. 12] Specifically, they contend that "bad faith and discriminatory purposes" motivated Elsmere's action.

However, "[t]o satisfy the Public Use Clause, a taking need only be 'rationally related to a conceivable public purpose.'" *Id.* (quoting *Hawaii Housing Auth. V. Midkiff*, 467 U.S. 229, 245 (1984)); *see also National R.R. Passenger Corp. v. Boston & Maine Corp.*, 503 U.S. 407, 422 (1992) ("[T]he Court will not strike down a condemnation on the basis that it lacks a public use so long as the taking 'is rationally related to a conceivable public purpose.'" (quoting *Midkiff*, 467 U.S. at 240-41.)). As stated in *Goldstein v. Pataki*, "a full judicial inquiry into the subjective motivation of every official who supported [a project]," is "an exercise as fraught with conceptual and practical difficulties as with state-sovereignty and separation-of-

power concerns." 516 F.3d 50, 63 (2d Cir. 2008). "[T]he task of a federal court reviewing the constitutionality of such a taking should be one of 'patrolling the borders' of this decision, viewed objectively, not second-guessing every detail in search of some illicit improper motivation." *Id.* (citing *Brody v. Village of Port Chester*, 434 F.3d 121, 135 (2d Cir. 2005)).

As stated earlier, the parties agree that Elsmere plans to condemn the land to use it as a public park. For over a century, "the condemnation of lands for public parks [has been] universally recognized as a taking for public use." *Rindge Co. v. County of Los Angeles*, 262 U.S. 700, 707-08 (1923). The plaintiffs have not alleged that Elsmere endeavored to acquire the "property under the mere pretext of a public purpose, *when its actual purpose was to bestow a private benefit*.'" *Kelo v. City of New London*, 545 U.S. 469, 479, 125 S. Ct. 2655, 162 L. Ed. 2d 439 (2005) (emphasis added). *Cf.* The "public use" clause "has long been understood to guarantee that 'one person's property may not be taken for the benefit of another private person without a justifying public purpose[.]'" *Goldstein v. Pataki*, 516 F.3d 50, 57 (2d Cir. 2008) (quoting *Thompson v. Consolidated Gas Utilities Corp.*, 300 U.S. 55, 80 (1937)).

### IV.   Conclusion

Based on the foregoing analysis, it is hereby

**ORDERED** as follows:

1.   The defendants' motion [Record No. 9] is **GRANTED** in part, and **DENIED**, in part. The plaintiffs' due process claims are **DISMISSED** without prejudice. The plaintiffs' pretextual taking and conspiracy to commit an unlawful taking claims are **DISMISSED** with prejudice.

2.   Administrator Matt Dowling and City of Elsmere council members, as individuals, are immune from suit. The Clerk of the Court is directed to terminate the

following defendants in their individual capacities: Matt Dowling, Gloria Grubbs, Nancy Bowman, Lisa Mitchell, Joanne Barnett-Smith, Malcom Daniels, and Aaron Moore.

Dated: May 26, 2023.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky